FOGLE et ux. v. BAKER et al.  (No. 7589.)

(Court of Civil Appeals of Texas. Galveston. June 27, 1918. Rehearing Denied Oct. 10, 1918.)

1. ADVERSE POSSESSION ⬥➝94 — FIVE-YEAR STATUTE—PAYMENT OF TAXES.

The five-year statute of limitation does not require, in order to acquire title by adverse possession, that taxes be paid before they become delinquent, but only that they be paid before suit.

2. LIMITATION OF ACTIONS ⬥➝5(1) — STATUTES—CONSTRUCTION.

Statutes of limitations are curative, and confer rights of property, which are as much entitled to protection as any other legal right.

3. ADVERSE POSSESSION ⬥➝71(2) — FORGED DEED—"FORGERY."

The fact that a deed was executed by "Wesley Baker" as "the sole heir of G. W. Baker, of Fayette county, Illinois," does not render the deed a "forgery," within the meaning of Vernon's Sayles' Ann. Civ. St. 1914, art. 5674, relating to adverse possession, by reason of the fact that the deed conveys land which was at one time owned by George W. Baker, who has no descendant or relative named Wesley Baker.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Forgery.]

4. ADVERSE POSSESSION ⬥➝71(2) — FORGED DEEDS.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5674, relating to adverse possession, it is immaterial that there is a forged deed in a chain of title, where other deeds are alone relied on to establish title.

Appeal from District Court, Harris County; J. H. Harvey, Judge.

Trespass to try title by George W. Baker and others against Lewis Fogle and others. From a judgment in favor of plaintiffs for an undivided one-half of the land, and in favor of defendants Fogle and wife on a cross-action for an undivided one-half of the land, plaintiffs and defendants Fogle

appeal. Affirmed in part, and reversed and rendered in part.

Hutcheson & Bryan, of Houston, for plaintiffs. Fred R. Switzer and Sam, Bradley & Fogle, all of Houston, for defendants Fogle.

PLEASANTS, C. J. This is an action of trespass to try title, brought by appellees, heirs at law of Daniel Baker, deceased, against appellants Lewis Fogle and wife, to recover a tract of 100 acres of land, a part of the A. F. Morse 640-acre survey, in Harris county. Appellees, William Giles and J. J. Sweeney, who held a mortgage upon the land executed by Lewis Fogle, were also made parties defendant. The defendants' answer contains a general denial, plea of not guilty, pleas of limitation of three, five and ten years, a plea of improvements in good faith, and a cross-action in form of trespass to try title. Plaintiffs by supplemental petition pleaded a general denial and plea of not guilty; that plaintiffs' ancestors, through whom they held, had died intestate; that no administration was had upon the estate of either, and that the period of limitation was suspended for one year after the death of each; that the five-year statute of limitation could not avail defendants because, in the absence of the five-year statute of limitation, they would deraign title through a forged deed.

The cause was tried without a jury in the court below, but the only issues submitted to the jury were those raised by defendants' plea of improvements in good faith and the question of the rental value of the land for the two years next preceding the filing of the suit. The issue as to improvements in good faith was decided adversely to defendants and the rental value of the property for the two years was found to be $200. Upon the return of the verdict judgment was rendered by the court in favor of plaintiffs for an undivided one-half of the land, and the sum of $100, and in favor of defendants Fogle on their cross-action for an undivided one-half of the land. From this judgment both parties have appealed.

The facts upon the issue of title to the land, which are undisputed, are as follows:

J. E. Foster was the common source of the title under which each of the parties claim. In 1875 J. E. Foster executed a deed conveying the land in controversy to George W. Baker for a recited consideration of $1. The land was in fact disposed of by lottery; the tickets in the lottery having been sold for $1. A ticket in this lottery bought by George W. Baker proved the winning ticket, and this was the actual consideration for the conveyance from Foster to Baker. In 1881 George W. Baker, for a consideration of $10, conveyed the land to Daniel Baker. This consideration was paid by the grantee in said deed. Daniel Baker died in 1901,

---

and his widow, who was his wife at the time the land was conveyed to him, died in 1910. The appellees are the heirs of Daniel Baker and his wife. Neither George W. Baker, Daniel Baker or wife, nor any of appellees, have ever been in possession of the land.

On November 9, 1898, F. A. Reichardt, administrator of the estate of J. E. Foster, deceased, for a consideration of $900, conveyed to Violet Foster a tract of 160 acres of land in Bell county and another tract of 160 acres in Comanche county, "and all interest of the estate of J. E. Foster, deceased, in all lands, wherever situated, except such as are included in the inventory and appraisement of the estate of J. E. Foster." The land in controversy was not inventoried in said estate. On November 2, 1908, Violet Foster conveyed the land in controversy to C. R. Brace for a consideration of $25. This deed was recorded on February 28, 1907. C. R. Brace conveyed the land to Lewis Fogle on February 20, 1907, for a consideration of $1,500. The deed was recorded on the day of its execution. On October 13, 1906, Wesley Baker conveyed the land to C. R. Brace. This deed recites that the grantor, Wesley Baker, was the sole heir of G. W. Baker, deceased, of Fayette county, Ill. This deed was recorded April 27, 1915.

It is agreed by the parties that the George W. Baker to whom the land was conveyed in 1875 by J. E. Foster is still alive, and has eight living children, and has no relative by the name of Wesley Baker. Defendant Lewis Fogle has been in actual, exclusive, and continuous possession of the 100 acres of land from the spring of 1907, claiming it under his deed from Brace, and cultivating, using, and enjoying the same. He has paid all taxes on the land for each year from 1906 up to and including the year 1916. This suit was filed October 2, 1916. The date of payment of the 1906 taxes was not shown. The taxes for 1907 were paid June 4, 1908, and the taxes for 1913 were paid on November 30, 1914. The taxes for each of the remaining years were paid before they became delinquent.

[1] Upon this state of the evidence the trial court held that defendant Fogle had not acquired title by limitation to the undivided one-half of the land inherited by plaintiffs from the wife of Daniel Baker, who, as before stated, died in 1910, because of the failure of Fogle to pay the taxes for the years 1907 and 1913, respectively, before they became delinquent. If, in order to acquire title by limitation under the five-year statute of limitation, the taxes on the land must be paid each year before they became delinquent, Fogle has not acquired title by limitation to the interest in the land owned by Mrs. Baker. Limitation began to run in Fogle's favor when he took possession under his recorded deed from Brace in 1907, but according to the holding of the trial court his

205 S.W.—48

possession for the year 1907 cannot be considered as a part of the five-year period required by the statute in order to acquire title, because the taxes for that year were not paid until after they became delinquent in 1908. Beginning, then, with 1908, for the next succeeding five years the taxes for each year were paid before they became delinquent. This perfected title by limitation to the undivided one-half of the land inherited by plaintiffs from Daniel Baker; but, as Mrs. Baker died in 1910 and no administration was had upon her estate, the statute was suspended for one of these five years, and the taxes for 1913, the next succeeding year to said five-year period, not having been paid before they became delinquent, the trial court held that no concurrent possession and payment of taxes for a period of five successive years was shown as to Mrs. Baker's interest in the land.

Appellants, under an appropriate assignment of error, assail this holding of the trial court, and we think the assignment should be sustained. We do not think the decisions of our Supreme Court, or any of our Courts of Civil Appeals, sustain the holding of the trial court that to acquire title under the five-year statute of limitation it is necessary, not only that there be peaceable and adverse possession and cultivation, use, and enjoyment of the land under a recorded deed, and the payment of taxes thereon, for a period of five successive years, but that the taxes for each of said years must be paid before they become delinquent. There is nothing in the language of the statute that requires that it be given such construction, and it seems to us it would be judicial legislation for the courts to require the taxes to be so paid to entitle the possessor of land to the protection and benefits of the statute. The statute has been uniformly construed by our courts as requiring that the possession and payment of taxes shall concur in the sense that the years for which the taxes are paid must be the five successive years in which the land was occupied, used, and enjoyed under a recorded deed. It has never been held that the taxes for each of these years must be paid during the year in which they became due, or before they became delinquent.

In the case of Snowden v. Rush, 76 Tex. 197, 13 S. W. 189, our Supreme Court held that the payment of taxes for the fifth year of the possessory period, made after the occupancy of the land had ceased and after the taxes had become delinquent, was a sufficient compliance with the statute. This decision has not been overruled or modified by any of our later decisions. In the case of Club Land & Cattle Company v. Wall, 99 Tex. 591, 91 S. W. 778, 122 Am. St. Rep. 666, it was held that the payment of taxes for the fifth year of the period of occupancy, made after suit for the land has been filed, would not avail the defendant under his plea of limitation, when the evidence showed that

the taxes for that year were due and defendant had more than a month to pay same before plaintiff's suit was filed. The extent of this holding is that the requirements of the statute must be complied with before suit is brought, and there is nothing in that opinion which sustains the ruling of the trial court in this case that the statute is not complied with, unless the taxes for each year are paid before they become delinquent. The full scope of the holding in that case is shown by the following quotation from the opinion:

"The indulgence by the state to the 1st of March did not relieve the taxpayer of the duty to pay at any time between the 1st of October and the 1st of March. When this suit was instituted, the possession of the half interest which belonged to the firm had continued for full five years and more, but the title had not been divested out of the true owners of the land, because the taxes on that half interest for 1903 had not been paid; and, there being no title in Matlock, Miller, and Dycus at the date of the institution of this suit, no act of theirs done thereafter could divest the title out of the plaintiff."

The only expression of our Supreme Court which in any way indicates that that court now dissents from the conclusion that the five-year limitation statute does not require the taxes to be paid during the year in which they accrue, or before they become delinquent, is found in the case of Capps v. Deegan, 92 Tex. 600, 50 S. W. 1117. In that case the Court of Civil Appeals held that the payment of taxes for the years 1890, 1891, and 1892 on November 29, 1892, was a sufficient compliance with the statute. In a memorandum opinion, refusing a writ of error in the case, the Supreme Court says:

"We are not prepared to concur with the Court of Civil Appeals in holding that the appellee made out her title to the land in controversy by virtue of the statute of limitations of five years, but * * * she showed title otherwise. The application is therefore refused."

. Appellee in that case set up a record title to the land and also a title by limitation. The trial court and Court of Civil Appeals both held her record title bad, but sustained her title by limitation. It does not appear from the opinion of the Court of Civil Appeals that there were any objections to the limitation title, other than the time of the payment of taxes; but there may have been, and it is stated in a written argument filed by counsel for the appellant that the record in that case does disclose a serious question as to the sufficiency of the possession, which was presented and urged by appellant. This may have been the question in the mind of the Supreme Court when it declined to concur with the Court of Civil Appeals in holding that appellee showed title by limitation. In any event, we do not feel constrained to interpret this expression of the Supreme Court as deciding that the statute requires the taxes to be paid before they become delinquent.

This court, in the case of Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1015, after a review of the cases upon this question, including the Capps v. Deegan Case, supra, concludes the discussion as follows:

"We are inclined to think that, in order for the payment of taxes to be concurrent with the possession, use, or cultivation under recorded deed, such payment must be made for each year with reasonable promptness, either when due and demandable, or within such reasonable time thereafter as is usual and customary in the payment of taxes."

In that case the taxes were not paid before they became delinquent, and this court declined to hold that the failure to so pay them prevented the acquisition of title under the five-year statute of limitation.

[2] The statutes of limitation are curative statutes, and confer rights of property which are as much entitled to protection as any other legal right. In the language of the Supreme Court of the United States in the case of McCluny v. Silliman, 3 Pet. 270, 7 L. Ed. 676:

"They rest upon sound policy, and tend to the peace and welfare of society. The courts do not now, unless compelled by the force of former decisions, give a strained construction, to evade the effect of those statutes."

[3] Appellees by cross-assignments contend that the five-year statute of limitation is not available to appellants, because "in the absence of said statute appellants would deraign title through a forged deed," and are claiming title under a forged deed. This construction is based upon the assumption that the deed from Wesley Baker to C. R. Brace was "a forged deed," in the meaning of that term as used in article 5674, Vernon's Sayles' Civil Statutes. We are not inclined to agree with appellees that the fact that the George W. Baker to whom Foster conveyed the land is living, and that he has not and never had a child or relative named Wesley Baker, is sufficient to show that the deed from Wesley Baker, which recites that he "is the sole heir of G. W. Baker, of Fayette county, Ill.," is a forgery. There is no evidence that this recital is not true; no evidence showing or tending to show that this deed was not executed by Wesley Baker, the sole heir of G. W. Baker, deceased, of Fayette county, Ill., except the fact that the deed conveys land which was at one time owned by a George W. Baker who is now living and has no descendant or relative named Wesley Baker. It is certainly not forgery to convey land that the grantor does not own, and it seems to us that this is all that is shown by the evidence in regard to the deed in question. If, however, it be conceded that the deed is a "forged deed," as that term is used in the statute, appellees' contention cannot be sustained, because appellants are not claiming under this deed. The point has been directly decided by the Court of Appeals for the Third District in the case of Olsen v. Creele, 190 S. W. 240. In that case it was contended that the statute of limitation was not available to de-

fendant because one of the deeds in his chain of title was a forgery. In disposing of this question Chief Justice Key, speaking for the court, says:

"But it is also contended on behalf of appellant that the five-year statute of limitation cannot avail in this case, because the undisputed testimony shows that a deed in appellees' chain of title, executed many years prior to the Allen deeds hereinbefore referred to, and purporting to have been executed under power of attorney from appellant, was a forgery. It is true that the statute relating to five-year limitation declares that 'no one claiming under a forged deed, or deed executed under a forged power of attorney, shall be allowed the benefits of this article'; but in their plea of five-year limitation appellees did not base their right to such limitation upon the deed charged to be a forgery, but upon deeds executed by the Allens, as hereinbefore stated, and which deeds were free from any suspicion of forgery. We hold that the provision of the statute denying the right to use a forged deed as the basis of the five-year statute of limitation has reference to the deeds relied on in support of that plea, and not to other deeds, not necessary to support such plea of limitation. Hence we hold that the proviso in the statute referred to has no application to this case."

[4] Appellant's possession and claim was under the recorded deeds from Violet Foster to Brace and from Brace to himself. The deed from Wesley Baker to Brace, while turned over to him at the time Brace conveyed the land to Fogle, was not placed of record until 1915, after appellant's possession had continued for eight years, and was not the deed relied on by appellants under their plea of limitation.

Our conclusion upon the question above discussed renders a determination of the other questions presented by appellants as grounds for a reversal of the judgment unnecessary. We conclude that, for the reasons above stated, the judgment of the trial court in favor of appellants for one-half of the land should be affirmed, and that portion of the judgment awarding appellees one-half of the land and $100 should be reversed, and judgment here rendered for appellants; and it has been so ordered.

Affirmed in part; reversed and rendered in part.